# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **Brian Jacobson, *et al.*,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | **Civil No. 1:15-cv-00764 (APM)** |
| ) | |
| **Insun S. Hofgard, *et al.*,** ) | |
| ) | |
| **Defendants.** ) | |

## <u>MEMORANDUM OPINION</u>

## I.   INTRODUCTION

In December 2014, Plaintiffs Brian Jacobson and Branko Jovanovic moved into a townhouse that they had recently purchased from Defendants Insun and Jefferson Hofgard. Although Defendants had advertised the property as a new, stunning renovation, Plaintiffs quickly found multiple major flaws in their new home.  Within the first several months of moving in, Plaintiffs uncovered zoning violations, faulty structural support, and defective heating, plumbing, and electrical systems.  Plaintiffs spent time and money addressing these defects, with minimal assistance from Defendants.

Believing that they had been swindled, Plaintiffs filed a lawsuit against Defendants alleging various claims sounding in tort and contract.  After removing the case to this court, Defendants filed a Motion to Dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  After reviewing the pleadings and the accompanying exhibits, the court grants in part and denies in part Defendants' Motion to Dismiss.  With some exceptions, the court finds that

Plaintiffs may proceed with their fraud and contract claims, as well as their claim under the District of Columbia Consumer Protection Procedures Act.

## II.    BACKGROUND

### A.    Factual Background

In November 2013, Defendants Insun S. Hofgard and Jefferson S. Hofgard—who buy, remodel, and then resell homes—purchased a townhouse located at 238 Madison Street, N.W., in the District of Columbia (the "Property").  Notice of Removal, ECF No. 1, Compl., ECF No. 1-1 [hereinafter Compl.], ¶¶ 4-5.  Over the next several months, Defendants renovated the Property, using the services of an unlicensed construction company, which operated without the required building permits, inspections, or approvals.  *Id*. ¶¶ 6-8.  The result was a home with zoning violations and significant construction defects, most of which were concealed behind floors and drywall.  *See, e.g.*, *id.* ¶¶ 9-11.  Despite these problems, Defendants put the Property on the market, listing it as a "stunning renovation" with a "fully furnished, improved 'English Basement set up with full kitchen.'"  *Id.* ¶ 12.  The Property's English basement was an important feature for Plaintiffs, who wished to buy a home with accommodations for live-in child care.  *Id.* ¶ 13.

On November 2, 2014, Plaintiffs entered into an agreement to purchase the Property from Defendants for $640,000 (the "Sales Contract").  *Id.* ¶ 15; Defs.' Reply to Opp'n to Mot. to Dismiss, ECF No. 7 [hereinafter Reply], Ex. 1, ECF No. 7-1 [hereinafter Defs.' Ex. 1], at 2-18.  Before purchasing the Property, Plaintiffs received from Defendants a disclosure statement (the "Disclosure Statement"), dated October 20, 2014, in which Defendants responded to a series of questions about the condition of the Property, as required by District of Columbia law.  *See* Compl. ¶¶ 13-15; Defs.' Ex. 1 at 29-35.  Plaintiffs acknowledged their receipt of the Disclosure Statement by signing a copy on November 2, 2014.  *Id.* at 35.

Pursuant to the terms of the Sales Contract, Plaintiffs' purchase of the Property was contingent on a home inspection.  Compl. ¶ 15.  Following this inspection, the parties modified the Sales Contract to include Defendants' promise to remedy prior to settlement 27 defects identified by Plaintiffs' home inspector.  *Id*. ¶ 16.  Among other fixes, Defendants agreed to "supply electricity to the basement stove."  *Id. ¶* 20.

At settlement on November 26, 2014, Plaintiffs and Defendants amended the Sales Contract one final time.  *Id*. ¶ 17.  This final amendment stipulated that Plaintiffs would delay occupancy of the Property until "final inspection and approval" by the District of Columbia Department of Consumer and Regulatory Affairs (the "DCRA").  *Id*.  This inspection was to occur "on or before December 11[ ], 2014."  *Id*.  On December 12, 2014, Plaintiffs moved into their new home, *id*. ¶ 18, even though the DCRA inspection did not actually occur until *after* Plaintiffs had occupied the Property, *see* Reply at 10 n.5.

Within a week of moving into the Property, Plaintiffs began to discover substantial problems with the construction of their new home.  Compl. ¶ 18.  First, on December 19, 2014, they learned from a DCRA inspector that "the basement kitchen violate[d] zoning laws and would need to be removed."  *Id*. ¶ 21.  That same day, Plaintiffs discovered that Defendants had "performed work without a plumbing permit and failed to obtain a rough plumbing inspection." *Id*. ¶ 27.  Shortly thereafter, attention to a leak revealed that a toilet had been incorrectly installed, causing contaminated water to saturate the property's insulation.  *Id*.

Additional defects came to light in January and February 2015.  Plaintiffs experienced difficulties heating the Property and uncovered subpar construction of the HVAC system.  *Id*. ¶¶ 22-23.  Pipes burst and the basement flooded, leading Plaintiffs to discover that the Property was inadequately insulated.  *Id*. ¶¶ 25-26.  Cracked walls and separated baseboards alerted

Plaintiffs to structural problems with the Property, which were confirmed by another DCRA inspector. *Id.* ¶ 28. Plaintiffs also became aware of significant problems with the Property's electrical system. *Id.* ¶ 29.

Plaintiffs assert that they relied on "the representations and omissions of material fact made by [D]efendants and their agents" in deciding "to purchase the Property on or about November 7, 2014 for the sum of $640,000." *Id.* ¶ 15. Since purchasing the Property, they allege that they have lost time and money addressing the various problems which have arisen. *Id.* ¶ 30. Because of the "unfit nature of the basement unit," Plaintiffs also claim that they have been unable to hire live-in child care as they had planned. *Id.* Overall, Plaintiffs contend that they have received "a residence whose value was greatly diminished by concealed defects and nonconforming use." *Id.* ¶ 54.

## B. Procedural Background

On April 29, 2015, Plaintiffs filed suit against Defendants in the Superior Court of the District of Columbia, alleging seven different causes of action. *See* Compl. ¶¶ 31-64; *see also* Notice of Removal, ECF No. 1, ¶ 1. On May 22, 2015, Defendants removed the case to this court. *See generally* Notice of Removal. A week later, Defendants filed their Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *See generally* Defs.' Mot. to Dismiss, ECF No. 5. Defendants argue both that Plaintiffs' claims cannot be sustained as a matter of law and that they fail to meet the pleading requirements of Federal Rules of Civil Procedure 8 and 9. *See generally* Defs.' Mem. in Support of Mot. to Dismiss, ECF No. 5-1 [hereinafter Mot. to Dismiss].

## III. LEGAL STANDARD

In evaluating a motion to dismiss under Rule 12(b)(6), the court must accept a plaintiff's factual allegations as true and "construe the complaint 'in favor of the plaintiff, who must be

granted the benefit of all inferences that can be derived from the facts alleged.'" *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979)).   The court need not accept as true "a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or "inferences . . . unsupported by the facts set out in the complaint," *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).   The factual allegations in the complaint need not be "detailed"; however, the Federal Rules demand more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citing *Twombly*, 550 U.S. at 555).   "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 556).   If the facts as alleged fail to establish that a plaintiff has stated a claim upon which relief can be granted, a court must grant defendant's Rule 12(b)(6) motion.   *See Am. Chemistry Council, Inc. v. U.S. Dep't of Health & Human Servs.,* 922 F. Supp. 2d 56, 61 (D.D.C. 2013).

## IV.   DISCUSSION

Plaintiffs have alleged seven causes of action against Defendants, including violation of the District of Columbia Consumer Protection Procedures Act, D.C. Code § 28-3904 (Count I); fraudulent misrepresentation (Count II); negligent misrepresentation (Count III); breach of contract (Count IV); breach of the covenant of good faith and fair dealing (Count V); negligence

(Count VI); and unjust enrichment (Count VII).  *See* Compl. ¶¶ 31-64.  Defendants have argued

that each of these causes of action should be dismissed for failure to state a claim.  Because the

analysis of Plaintiffs' fraudulent misrepresentation claim is determinative of several of Plaintiffs'

other claims, the court turns to that claim first.

### A.      Fraudulent Misrepresentation (Count II)

To successfully assert a claim for fraudulent misrepresentation, or fraud in the

inducement,[1] under District of Columbia law, "a plaintiff must prove (1) a false representation, (2)

in reference to a material fact, (3) made with knowledge of its falsity, (4) with the intent to deceive,

and (5) action taken . . . in reliance upon the representation, (6) which consequently resulted in

provable damages."  *Regan v. Spicer HB, LLC,* --- F. Supp. 2d. --- , 2015 WL 5611402, at *9

(D.D.C. Sept. 22, 2015) (citing *Wetzel v. Capital City Real Estate*, 73 A.3d 1000, 1002-03 (D.C.

2013) (citation omitted)).  "A false representation may be either 'an affirmative misrepresentation

or a failure to disclose a material fact when a duty to disclose that fact has arisen.'"  *Sundberg v.

TTR Realty, LLC*, 109 A.3d 1123, 1131 (D.C. 2015) (citations omitted).  "Mere silence," however,

"does not constitute fraud unless there is a duty to speak."  *Id.* (citations and internal quotation

marks omitted).  In addition, "in cases involving commercial contracts negotiated at arm's length,

there is the further requirement . . . that the defrauded party's reliance be *reasonable*."  *Regan*,

2015 WL 5611402 at *9 (citing *Drake v. McNair*, 993 A.2d 607 (D.C. 2010) (citation omitted)).

Federal Rule of Civil Procedure 9(b) requires a claim of fraudulent misrepresentation to be

pled with particularity.  Fed. R. Civ. Pro. 9(b); *see also, e.g., Intelstat USA Sales Corp. v. Juch-*

---

[1] The court reads Plaintiffs' Complaint and Opposition to assert a claim of fraudulent inducement (also known as a fraud-in-the-inducement claim).  The requirements for such a claim are essentially the same as those for a fraudulent misrepresentation claim.  *See In re U.S. Office Products Co. Secs. Lit.*, 251 F. Supp. 2d 77, 99-101 ("The elements of fraud and fraudulent inducement are the same" and "[f]raudulent inducement to enter a contract requires a misrepresentation or omission that pertains to an essential term of a contract and the intent to convince a plaintiff to enter the contract." (citations omitted)).

*Tech, Inc.*, 935 F. Supp. 2d 101, 107 (D.D.C. 2013).  Federal Rule of Civil Procedure 8—requiring only a "short and plain statement of the claim"—remains applicable as well.  *Intelstat*, 935 F. Supp. 2d at 107.  The D.C. Circuit has determined that together, these rules require that fraud-related claims state "the time, place, and content of the false misrepresentations, the fact misrepresented, and what was retained or given up as a consequence of the fraud, as well as the individuals allegedly involved in the fraud."  *Id.* (citing *United States ex rel. Williams v. Martin-Baker Aircraft Co.*, 389 F.3d 1251, 1256 (D.C. Cir. 2004) (citation omitted)).

      *1.     Defendants' Alleged Fraudulent Misrepresentations*

      a.     <u>Defendants' advertisements regarding the quality of the renovation</u>

Plaintiffs claim that Defendants fraudulently misrepresented the condition of the Property when they advertised it as a "stunning renovation" and "newly renovated."  Compl. ¶¶ 12, 36; Pls.' Opp'n to Defs.' Mot. to Dismiss, ECF No. 6 [hereinafter Opp'n], at 10.  The court concludes that the first statement—"stunning renovation"—does not provide the basis for a fraud claim, but that the second statement—"newly renovated"—does.

Defendants' characterization of the Property as a "stunning renovation" "is a classic example of commercial puffery on which no reasonable person would rely."  *Jefferson v. Collins*, 905 F. Supp. 2d 269, 283 (D.D.C. 2012) (citations and internal quotation marks omitted) (finding that defendants' representation that a property was a "gorgeous renovation" could not "form the predicate for a fraud claim because it is a classic example of commercial puffery" (citations and internal quotation marks omitted)).  Thus, it cannot form a basis for a fraudulent misrepresentation claim.  *See also SEC v. E-Smart Techs., Inc.*, 74 F. Supp. 3d 306, 323 (D.D.C. 2014) (stating that "generalized statements of optimism that are not capable of objective verification" are non-actionable misrepresentations (citation omitted)); *Hotye v. Yum! Brands, Inc.*, 489 F. Supp. 2d 24,

30 (D.D.C. 2007) (finding that advertisements that a restaurant serves the "best food" and could be part of a healthy lifestyle were non-measurable, non-actionable puffery).

On the other hand, Defendants' statement that the Property was "newly renovated" can form the basis for a fraud claim. Under District of Columbia law, "a statement literally true" is nonetheless "actionable if made to create a false impression." *Remeikis v. Boss & Phelps, Inc.*, 419 A.2d 986, 989 (D.C. 1980). The Restatement (Second) of Torts concurs with this view: "A representation stating the truth so far as it goes but which the maker knows or believes to be materially misleading because of his failure to state additional or qualifying matter is a fraudulent misrepresentation." Restatement (Second) of Torts § 529 (1977). In other words, "a statement that contains only favorable matters and omits all reference to unfavorable matters is as much a false representation as if all the facts stated were untrue." *Id.* § 529 cmt. a.

Here, although the statement that the Property was "newly renovated" is literally true, Plaintiffs have alleged that when Defendants advertised the house for sale they knew and failed to disclose that the "renovation to the property was made by an unlicensed contractor, without proper building permits, . . . and did not conform to zoning regulations." Compl. ¶ 32(b). They also allege that Defendants knew and failed to disclose that the Property was poorly constructed and contained major defects that had to be resolved. *Id.* ¶¶ 14, 18-30. Thus, Plaintiffs have alleged that Defendants represented the good about the Property—it was "newly renovated"—but concealed the bad—it did not conform to licensing and zoning requirements and was shoddily constructed. And the reason they did not disclose the bad, according to Plaintiffs, was to "create a false impression," *Remeikis*, 419 A.2d at 989, about the quality of the Property's condition, so that Plaintiffs would be induced to purchase the Property, *see, e.g.*, Compl. ¶¶ 32-34, 36-38. At this stage in the proceedings, where the court must draw all inferences in favor of Plaintiffs, the court

concludes that Defendants' statement that the Property was "newly renovated"—as well as their material omissions about the Property's construction and condition—are actionable as fraudulent misrepresentations.[2]

> b.   Defendants' advertisements regarding the presence of an "English Basement" with "full kitchen"

For the same reasons that the statement "newly renovated" is actionable, so too is Defendants' statement advertising the Property as having an "English Basement set up with full kitchen." *Id.* ¶¶ 12, 36.  That statement is arguably factually true as the Property did contain an "English Basement set up with full kitchen." *See* Compl. ¶¶ 19-20.  Plaintiffs, however, also have alleged that Defendants "kn[ew] that the second kitchen was illegal," *id.* ¶ 20, but did not disclose its illegality to Plaintiffs, *id.* ¶¶ 14, 32(b).  They contend that Defendants made such a material omission for the purpose of inducing Plaintiffs to purchase the Property, *id.* ¶ 38, and that Plaintiffs "relied with justification" on the omission, *id.* ¶ 39.  Defendants' failure to disclose the illegality of the basement kitchen to Plaintiffs renders their advertisement of the Property as having an "English Basement set up with full kitchen" actionable for fraud.

The D.C. Court of Appeals' decision in *Remeikis* supports that conclusion.  In *Remeikis*, the Court of Appeals relied on *Ehrlich v. Real Estate Commission*, 118 A.2d 801 (D.C. Mun. App. 1955).  *See Remeikis*, 419 A.2d at 990.  In *Ehrlich*, the court reviewed a finding made by the District of Columbia's Real Estate Commission that real estate brokers had made a substantial misrepresentation by advertising and representing a property as having a rentable apartment, when

---

[2] Although Plaintiffs did not specify the date or dates when Defendants advertised the home or made the material omissions to Plaintiffs, reading the Complaint in the light most favorable to Plaintiffs, the court can infer that the advertisements and omissions occurred in or about the fall of 2014, about the time when Plaintiffs attended an open house for the Property's sale, Compl. ¶ 13, but before November 2, 2014, when Plaintiffs entered into the Sales Contract, Defs.' Ex. 1 at 18.  Therefore, Plaintiffs have sufficiently stated with particularity the time of the false misrepresentations.

in fact they knew, and did not disclose, that zoning restrictions disallowed such use of the property. *See Ehrlich v. Real Estate Commission*, 118 A.2d at 802.  The court in *Ehrlich* observed that "[w]hen a person undertakes to make a statement in a business transaction, either voluntarily or in response to inquiries, he is bound not only to state truly what he tells, but also not to suppress or conceal any facts within his knowledge which would materially qualify those stated." *Id.*  The court concluded that the facts adduced before the Commission were "adequate to support a conclusion that there was a misrepresentation by suppression." *Id.*

The D.C. Court of Appeals in *Remeikis* also cited to section 529 of the Restatement (Second) of Torts for the proposition that "misleading half[-]truths can be fraudulent misrepresentations." *Remeikis*, 419 A.2d at 990.  Section 529 offers an illustration of that proposition that is instructive here.

> A, selling an apartment house to B, informs B that the apartments in it are all rented to tenants at $200 a month. This is true, but A does not inform B that the rent of $200 has not been approved by the local Rent Control authorities, and without this approval it is not legal. B buys the apartment house, believing that the rent of $200 is legal and he can continue to collect it. A's statement is a fraudulent misrepresentation.

Restatement (Second) of Torts § 529 cmt. c, illustration 2 (1977).

Like the actors in *Ehrlich* and the above-quoted Restatement illustration, Defendants here are accused of advertising by half-truth.  They touted the Property's English basement, but did not disclose—with the aim of enticing buyers to purchase the Property—that the renovated basement violated zoning regulations.   Under *Ehrlich* and section 529 the Restatement, Defendants' statement that the Property had an "English Basement with full kitchen" is thus an actionable fraudulent misrepresentation.

c.       Defendants' allegedly false statements and omissions in the
Disclosure Statement regarding the condition of the Property

Plaintiffs also allege that Defendants' "pre-contract [D]isclosure [S]tatement dated

October 20, 2014 misrepresented and omitted material facts."   Opp'n at 10.   According to

Plaintiffs, Defendants:

> misrepresented or omitted material facts about which they had actual knowledge
> including . . . knowledge of the structural defects in the floors and walls[;] . . .
> disclosure of the defective ductwork for the heating and cooling system[;] . . .
> knowledge of defects in the plumbing system[;] . . . knowledge of defects in the
> electrical system[;] . . . [and] knowledge of any zoning violation or nonconforming
> uses[.]

Compl. ¶ 14.

The court finds that Plaintiffs have sufficiently alleged a claim for fraudulent

misrepresentation based on the Disclosure Statement.[3]  Plaintiffs have specifically identified when

and where Defendants made their alleged misrepresentations.    *Id.* (noting that such

misrepresentations were found "[i]n a disclosure statement dated October 20, 2014").  They have

alleged that Plaintiffs had knowledge about the Property's fundamental defects, but concealed

them in order to induce Plaintiffs to purchase the Property.  *Id.*  And Plaintiff claim that they relied

on the representations in the Disclosure Statement, acted on them, and incurred damages as a result.

*Id.* ¶ 15 ("In reliance on these and other representations and omissions . . . plaintiffs contracted to

purchase the Property . . . for the sum of $640,000"); *see also id.* ¶ 54 (stating that Defendants'

"misrepresentations and omissions deprived [P]laintiff[s] of the fruits of the sales contract by

conveying a residence whose value was greatly diminished by concealed defects and

---

[3] Citing to paragraphs 36 through 40 of the Complaint, Defendants argue that "Plaintiffs' fraudulent misrepresentation claim is not based on the Disclosure Statement."  Reply at 8.  Defendants, however, read the Complaint far too narrowly.  Although it is true that the numbered paragraphs under Count II do not specifically reference the Disclosure Statement, other paragraphs make clear Plaintiffs' intention to plead the Disclosure Statement as grounds for their fraud claim.  *See, e.g.,* Compl. ¶¶ 14-15 (alleging that Defendants "misrepresented or omitted material facts" in the Disclosure Statement and that Plaintiffs relied on these "representations and omissions of material fact").  And Count II expressly incorporates those paragraphs.  *Id.* ¶ 35.

nonconforming use").[4]

### 2.   Defendants' Contentions

Defendants raise three main arguments to defeat Plaintiffs' fraud claim.  First, they contend that Plaintiffs' fraud claim must fail because it is essentially duplicative of their breach of contract claim.  Mot. to Dismiss at 7-8.  Second, they contend that the Sales Contract's integration clause precludes a claim of fraud based on extra-contractual representations or omissions.  Reply at 2-4.  And, third, they argue that, because Plaintiffs have failed to specify which of the two Defendants made the allegedly fraudulent representations and omissions, Plaintiffs have failed to satisfy the heightened pleading standard of Rule 9(b).  Mot. to Dismiss at 9.  The court considers these arguments in turn.

### a.   Plaintiffs' fraud claim as duplicative of their breach of contract claim

Defendants argue that Plaintiffs' fraudulent misrepresentation claim fails because they have not pled "an independent injury over and above the mere disappointment of a plaintiff's hope to receive his contracted-for benefit."  Mot. to Dismiss at 8 (citation and internal quotation marks omitted).  In support of this argument, Defendants cite *Slinski v. Bank of America, N.A.*, 981 F. Supp. 2d 19, 32 (D.D.C. 2013), which in turn relies on the D.C. Court of Appeals' decision in *Choharis v. State Farm Fire and Casualty Company*, 961 A.2d 1080, 1089 (D.C. 2008).  *Choharis* articulates the principle at the heart of Defendants' argument:  "[T]he tort [of fraud] must exist in its own right independent of the contract, and any duty upon which the tort is based must flow from considerations other than the contractual relationship."  *Id*.  In other words, "District of Columbia law requires that the factual basis for a fraud claim be separate from any breach of

---

[4] Plaintiffs also allege fraud arising from certain promises made by Defendants to make repairs to the Property and to allow a final inspection by the DCRA before Plaintiffs moved in.  Compl. ¶ 36.  Whether such statements can form the basis for a fraud claim is addressed in the next section.

contract claim that may be asserted." *Plesha v. Ferguson*, 725 F. Supp. 2d 106, 113 (D.D.C. 2010). Here, Defendants argue, "Plaintiffs' claimed injury . . . involves nothing beyond Plaintiffs' alleged contractual disappointment." Mot. to Dismiss at 8.

Defendants are correct—but only partially so.  Plaintiffs do allege certain representations that are duplicative of their breach of contract claim.  In their Complaint, Plaintiffs aver that Defendants fraudulently misrepresented "that agreed upon repairs would be made by a licensed contractor, that the repairs would be performed in a good workmanlike manner and that the property would have DCRA's final inspection and approval prior to [P]laintiffs' occupancy." Compl. ¶ 36.  These statements arise from negotiations involving the content and conditions of the Sales Contract.  They relate to a contingency added to the Sales Contract requiring a home inspection of the Property; a promise by Defendants to make 27 specific repairs before settlement; and an amendment made at settlement requiring Plaintiffs to delay occupancy until "final inspection and approval" of the Property by the DCRA. *Id.* ¶¶ 16-17.  Because those issues directly involve the terms and conditions of the Sales Contract, they are duplicative of Plaintiffs' breach of contract claim and cannot provide the basis for an actionable, independent tort.

Plaintiffs' fraudulent misrepresentation claim, however, also alleges "misrepresentations that *precede* the formation of the contract and are alleged to have induced plaintiffs to contract to purchase the property." Opp'n at 10 (emphasis added).  The court disagrees with Defendants that such statements are inappropriately duplicative of Plaintiffs' breach of contract claim.  These representations do not spring from the Sales Contract. *See* Compl. ¶¶ 14-15; Opp'n at 10. Rather, they are rooted in the representations and omissions that preceded the Sales Contract's formation. Compl. ¶ 36; Opp'n at 10 ("[H]ere . . . there are allegations of misrepresentations that precede the formation of the contract and are alleged to have induced plaintiffs to contract to purchase the

property.").   As discussed, Plaintiffs allege that Defendants made false representations and omissions when advertising the Property and when completing the Disclosure Statement.  Compl. ¶¶ 14, 36.  Because of these fraudulent misrepresentations and omissions, Plaintiffs did not face mere contractual disappointment—they entered into a contract to purchase a property that they would not have otherwise.  *Id.* ¶ 15.

Defendants also possessed a duty, independent of the Sales Contract, to make truthful representations about the Property.  Defendants were required by District of Columbia law to provide and make representations about the Property's condition in the Disclosure Statement. D.C. Code § 42-1302(a)(1) ("The transferor of any real property described in § 42-1301(a) shall deliver to the prospective transferee a real property disclosure statement on a form to be approved by the Mayor . . . before or at the time the prospective transferee executes a purchase agreement with the transferor.").  Moreover, as a seller of real property, Defendants had a duty independent of the Sales Contract to make truthful representations about the Property to potential buyers.  *See Remeikis*, 419 A.2d at 990 (citing *Ehrlich*, 118 A.2d at 802 ("When a person undertakes to make a statement in a business transaction, either voluntarily or in response to inquiries, he is bound not only to state truly what he tells, but also not to suppress or conceal any facts within his knowledge which would materially qualify those stated.")).

Finally, Plaintiffs' alleged injury arising from the alleged fraud—purchasing a Property whose value was not as great as its purchase price of $640,000, Compl. ¶¶ 15, 54; Opp'n at 12— is sufficiently independent from the injuries stemming from Defendants' alleged failure to provide Plaintiffs with their contracted-for benefits.  *See Parr v. Ebrahimian*, 774 F. Supp. 2d 234, 239 (D.D.C. 2011) (finding that plaintiff had sufficiently stated a claim for fraud where plaintiff's

alleged injury was that "she purchased a condominium that was not as valuable as she believed it to be").

                        b.      <u>Effect of the Sales Contract's integration clause on Plaintiffs' fraud claim</u>

Next, Defendants argue that Plaintiffs cannot, as a matter of law, predicate a fraud claim on pre-contractual representations and omissions because the Sales Contract itself contained an "integration clause." Reply at 3-4, 8. That clause read as follows: "This Contract, unless amended in writing, contains the final and entire agreement of the parties and the parties will not by bound by any terms, conditions, oral statements, warranties or representations not herein contained." Defs.' Ex. 1 at 8, ¶ 31. Defendants argue that,

> [a]s a result [of the integration clause], the only relevant statements and representations are those contained in the Contract itself—alleged misrepresentations prior to contract formation are irrelevant. Absent an allegation that a pre-contractual representation was omitted from the contract by fraud, the Contract's integration clause bars Plaintiffs' claims.

Reply at 3 (citations omitted).

Defendants' argument is not without some merit. Two recent decisions from this District Court have held (1) that a residential sales contract's integration clause rendered unreasonable the plaintiffs' reliance on representations made in a Disclosure Statement, and (2) that the sales contract's integration clause rendered those representations immaterial. *See Regan*, 2015 WL 5611402 at *5-7, *9-10; *Ju v. Carter*, 2015 WL 5168251 at *5-7, *9-10 (D.D.C. Aug. 31, 2015). The courts in *Regan* and *Ju*, therefore, concluded that the plaintiffs had failed, as a matter of law, to state claims of fraud. *See Regan*, 2015 WL 5611402 at *9-10; *Ju*, 2015 WL 5168251 at *9-10. Although the court respects these decisions, it reaches a different conclusion for the reasons explained below.

First, there are important factual differences between *Regan*, *Ju*, and the case before the court. In *Regan*, the plaintiff entered into the sales contract to buy his property at least a day—and possibly over a week—before he saw the defendant's disclosure statement. *Regan*, 2015 WL 5611402 at *1-2. Because he did not see the disclosure statement before signing the contract, he could not have relied on its terms and conditions in making his decision to purchase the property. Here, by contrast, Defendants signed the Disclosure Statement on October 20, 2014—13 days before the Sales Contract date of November 2, 2014. Defs.' Ex. 1 at 9, 35. Although Plaintiffs have not alleged the precise date on which they received the Disclosure Statement, *see* Compl. ¶ 14, they do assert that they relied on it before entering into the Sales Contract, *see id.* ¶ 15, which materially distinguishes this case from *Regan*.

In *Ju*, the sales contract signed by plaintiffs contained an "as is" clause, which stated that the property would be conveyed in its "as is" condition. *Ju*, 2015 WL 5168251 at *2. Further, the plaintiffs "expressly declined to make their purchase of the Property contingent on any inspections." *Id.* Where the plaintiffs took the substantial risk of agreeing to accept a property in its "as is" condition and explicitly declined to take steps to confirm what exactly that condition might be, any misrepresentations about the condition of the property, the court in *Ju* found, could not be material. *Id.* at *9-10. Here, in sharp contrast, the Complaint clearly alleges that Defendants' representations about the Property's condition were material to Plaintiffs' decision to purchase it. Indeed, Plaintiffs here made their Sales Contract contingent on two separate inspections and 27 repairs; they did not take the risk of a buying the Property in an "as in" condition like the plaintiffs in *Ju*. Compl. ¶¶ 15-17. *Ju* thus presents a different case from this one.

Second, based on the Complaint's allegations, the court cannot conclude at this stage that, as a matter of law, the Sales Contract's integration clause precludes a fraud claim premised on

16

extra-contractual representations and omissions.  As discussed further below, cases interpreting District of Columbia law require the court to make a factual determination whether an integration clause precludes a party from reasonably and materially relying on extra-contractual statements or omissions.  Here, the court cannot find, at the motion to dismiss stage, that the integration clause in the Sales Contract has such preclusive effect.

> i.    *District of Columbia law addresses the relationship between integration clauses and fraud-in-the-inducement claims*

Integration clauses, also known as merger clauses, are contract provisions that generally state that the agreement as written constitutes the entire agreement between the parties and supersedes any prior representations.  6 Peter Linzer, *Corbin on Contracts* § 25.8[A] (Joseph M. Perillo ed., 2010) [hereinafter *Corbin*], at 68.  In general, under District of Columbia law, "[a] completely integrated contract may not be supplemented with prior representations not ultimately included therein, even if those representations are not expressly contradicted by the contract itself." *Hercules & Co., Ltd. v. Shama Restaurant Corp.*, 613 A.2d 916, 928 (D.C. 1992) (citation omitted).  A corollary to that principle is the parol evidence rule, which provides that "when the parties to a contract have reduced their entire agreement to writing, the court will disregard and treat as legally inoperative parol evidence of the prior negotiations and oral agreements."  *Id.* (citation omitted).

Contrary to Defendants' assertion, however, the mere presence of an integration clause does not automatically preclude claims premised on representations or omissions that fall outside the contract.  It is true that courts have relied on integration clauses to preclude fraud claims.  *See, e.g., Hercules*, 613 A.2d at 932; *One-O-One Enterprises, Inc. v. Caruso*, 848 F.2d 1283 (D.C. Cir. 1988).  But the presence or absence of such a clause is not conclusive as to integration. *See* 11 Samuel Williston, *A Treatise on the Law of Contracts* § 33:15 at 963 (Richard A. Lord ed.,

2012) ("The presence of an integration clause can make an agreement appear to be complete, but just as its presence does not conclusively show that an agreement is integrated, the absence of a merger clause does not preclude a determination that a contract is, in fact, an integrated writing."). "[E]ven if a contract contains a merger clause, the court should look at all factors to decide whether the merger clause should be treated as binding" and whether the contract is fully integrated. *Corbin* § 25.7 at 60.

Thus, the force accorded to an integration clause is dependent upon the facts. *Corbin* § 25.8[A] at 70 (observing that an integration clause "should be given weight based on the circumstances under which it was adopted, including the complexity and sophistication of the contract and the parties" (referencing the Restatement (Second of Contracts) §§ 209 cmt. b, 210 cmt. b, 216 cmt e)).

> [Although] [t]he judge as preliminary gate-keeper . . . should always be able to consider the merger clause as evidence of integration, . . . the presumption of integration should become weaker and more easily rebuttable as the deliberateness and consciousness of the merger clause becomes weaker. . . . [T]he courts should recognize the differences in the impact that merger clauses have as warnings to the parties that the words of a writing will wipe out what came before.

*Corbin* § 25.8[A] at 98-99. Yet courts must also be careful to avoid "defeat[ing] the clear words and purpose of the . . . integration clause" or else "contracts would not be worth the paper on which they are written." *Hercules*, 613 A.2d at 930 (citations and internal quotation marks omitted). Analysis of an integration clause therefore involves a careful balance: "Self-serving claims made after the fact [of the contract] should be discounted, but that does not justify playing a game of 'gotcha[ ]' [using the integration clause,] particularly when one or both of the parties are not well-educated, sophisticated and represented by counsel who know their business." *Corbin* § 25.8[A] at 99.

Cases within the District of Columbia have long grappled with this tension between

honoring the text of a contract and fulfilling the salutary purpose of protecting less sophisticated

parties in unequal bargaining positions.  In *One-O-One*, the D.C. Circuit held that a written contract

with an integration clause precluded a fraud-in-the-inducement claim.   848 F.2d at 1287.

Emphasizing that the parties were sophisticated and that they had negotiated the contract at issue

over a period spanning eight months, the court held that "Plaintiffs cannot overcome the written

instrument here, and, particularly, the integration clause, by invoking the fraud-in-the-inducement

exception to the parol evidence rule."  *Id.*  The D.C. Circuit explained:

> Were we to permit plaintiffs' use of the defendants' prior representations (and
> defendants' nondisclosure of negotiations inconsistent with those representations)
> to defeat the clear words and purpose of the Final Agreement's integration clause,
> contracts would not be worth the paper on which they are written.  On a matter of
> such large significance to the parties' bargain, silence in a final agreement
> containing an integration clause—in the face of prior explicit representations—
> must be deemed an abandonment or excision of those earlier representations.

*Id.* (citations and internal quotation marks omitted).

Several years later, in *Hercules*, the D.C. Court of Appeals heavily cited to *One-O-One*

*Enterprises* in deciding that it, too, would hold that a fraud-in-the-inducement claim could not

supplant an integration clause.  *Hercules*, 613 A.2d at 931.  Yet the D.C. Court of Appeals also

noted that other courts had more permissive stances on the issue and it cabined its holding

accordingly.  *Id.*  It explained that its decision was based on "circumstances in which the policies

against circumventing the parole evidence rule [we]re especially compelling" and declined to

"decide whether . . . [it] should follow cases like *One-O-One* . . . in the generality of 'fraud-in-the-

inducement' disputes."  *Id.*  In ruling that it would enforce the integration clause, the court

explained:

> This is not a case in which a powerful party forced a helpless supplicant into
> submission. . . .  [The parties] were sophisticated business institutions dealing with
> each other on a level playing field. . . .  As in *One-O-One*, the parties in the present
> case, each concededly represented by competent counsel, engaged in arm's length

negotiations before reaching agreement.

*Id.* at 932.

In *Whelan v. Abell*, 48 F.3d 1247 (D.C. Cir. 1995), the D.C. Circuit once again addressed integration clauses and their preclusive effect on fraud claims.  Rejecting what the court considered a "rather broad reading" of *One-O-One* advanced by the plaintiffs, the D.C. Circuit clarified that it had "not intended to say [in *One-O-One*] that an integration clause bars fraud-in-the-inducement claims generally or confines them to claims of fraud in execution."  *Id.* at 1258.  It noted that "[s]uch a reading would leave swindlers free to extinguish their victims' remedies simply by sticking in a bit of boilerplate."  *Id.* (citations omitted).  The court concluded that "the integration clause in the parties' agreement here does not, as [plaintiffs] suggest, establish that all of defendants' claims of fraud in the inducement were false as a matter of law."  *Id.*

More recently, in *Drake v. McNair*, 993 A.2d 607 (D.C. 2010), the D.C. Court of Appeals expressed its "agree[ment] with the [D.C. Circuit] court's general statement in *Whelan* that an integration clause does not provide a blanket exemption to claims of fraud in the inducement."  993 A.2d at 624.  It also stressed the importance of a distinction made in *Whelan* that the D.C. Court of Appeals found particularly critical—the difference between fraudulent representations regarding future behavior and other types of fraudulent representations.  *Id.*  Based on this distinction, the D.C. Court of Appeals held:

> When a written contract contains an incorporation clause, any alleged prior representations that a party will or will not do something *in the future* that are not included in that written contract generally do not suppose a fraud-in-the-inducement claim.  On the other hand, prior representations that conceal fraudulent conduct . . . may provide support for such a claim.

*Id.* (emphasis added). Under current District of Columbia law, therefore, "an integration clause does not provide a blanket exception to claims of fraud in the inducement," at least when those claims relate to prior representations that conceal fraudulent conduct.[5] *Id.*

ii.    *District of Columbia law supports Plaintiffs' fraud claim*

Applying the foregoing precedents, this court cannot conclude, at the motion to dismiss stage, that the integration clause in the Sales Contract bars Plaintiffs' claim of fraudulent misrepresentation. First, unlike the agreements at issue in *One-O-One*, 848 F.2d at 1284-85, and *Drake*, 993 A.2d at 612-13, 621-22, the Sales Contract in this case is a boilerplate form contract—produced by the Greater Capital Area Association of Realtors—that apparently is widely used for residential real property purchases in the District of Columbia. On its face, the contract does not appear to be the product of lengthy, back-and-forth negotiations consummated by legal counsel. Moreover, the integration clause itself constitutes only a single sentence within an at least 17-page, single-spaced contract, including addendums. *See generally* Defs.' Ex. 1. That sentence is not highlighted in any way to distinguish it from any other part of the contract. *Cf.* Defs.' Ex. 1 at 4, 6, 8 (¶¶ 10, 13, 24, 30 contain contractual clauses with bolded terms). In light of these factors, the court believes that the D.C. Circuit's admonishment in *Whelan*—that courts should not reflexively give preclusive effect to integration clauses, because to do so "would leave swindlers free to

---

[5] Although Defendants argue that "[a]bsent an allegation that a pre-contractual representation was omitted from the contract by fraud, the Contract's integration clause bars Plaintiffs' claims," Reply at 3, the court disagrees. Although some courts have interpreted precedent to set such a standard, *see, e.g.*, *Ju*, 2015 WL 5168251 at *6, this court finds that such an interpretation is not congruent with the broader fraud-in-the-inducement exception set forth in *Whelan* and *Drake*. Nor is it consistent with the Restatement (Second) of Contracts, which distinguishes between the voidability of a contract due to fraud and the applicability of a merger clause. Restatement (Second) of Contracts § 214 cmt. c (1977) ("What appears to be a complete and binding integrated agreement . . . may be voidable for fraud, duress, mistake, or the like, or it may be illegal. Such invalidating clauses need not and commonly do not appear on the face of the writing. They are not affected even by a 'merger' clause." (citation omitted)).

extinguish their victims' remedies simply by sticking in a bit of boilerplate," 48 F.3d at 1258 (citations omitted)—has particular force in this case.

Second, the alleged fraudulent representations and omissions at issue in this case do not concern promises by Defendants regarding their future behavior, but rather involve concealment of the condition of the Property and its non-compliance with zoning requirements at the time the statements were made, with the intention of inducing Plaintiffs to purchase the Property. Compl. ¶ 38. In both *Whelan* and *Drake*, the D.C. Circuit and the D.C. Court of Appeals, respectively, observed that integration clauses do not necessarily bar such claims. *Whelan*, 48 F.3d at 1258; *Drake*, 993 A.2d at 624. Indeed, in *Drake*, the D.C. Court of Appeals expressly held that "an integration clause does not provide a blanket exception to claims of fraud in the inducement," and observed that the court in *Whelan* "was correct in distinguishing [as the basis for a claim of fraud-in-the-inducement] allegedly fraudulent representations with regard to promises of future behavior." *Drake*, 993 A.2d at 624 (citing *Hercules*, 613 A.2d at 918-19, and *One-O-One*, 848 F.2d at 1285).

Finally, at this stage, open questions remain about the parties' relative bargaining power and sophistication, as well as the details of the Sales Contract's negotiation and execution, which weigh against dismissal before discovery. Plaintiffs have alleged that Defendants were in the business of buying, renovating, and selling houses. Compl. ¶ 4. Plaintiffs' sophistication in the purchase of real property, on the other hand, is less clear—although they were astute enough to demand additional repairs as a contingency to the final sale. *Id.* ¶¶ 15-16. It is also unknown at this juncture precisely when Plaintiffs received either the Sales Contract or the Disclosure Statement, the extent to which they reviewed them, and, although they had a real estate agent, whether they had a lawyer review and advise them about the terms. All of these factors, in the

court's view, ought to be given consideration before dismissing Plaintiffs' fraud claim based on a boilerplate integration clause.   Accordingly, the court concludes, at this juncture, that the Sales Contract's integration clause does not bar Plaintiffs' fraudulent misrepresentation claim.[6]

c.   Plaintiffs' compliance with Rule 9(b)

Defendants also argue—both in regard to their fraudulent misrepresentation claim and several of their other claims—that Plaintiffs have not pled their claims with appropriate particularity under Rule 9(b) because they refer to "'Defendants' collectively." *See, e.g.*, Mot. to Dismiss at 9.   But the cases cited by Defendants to substantiate their argument do not provide the support Defendants desire.   For example, *Martin-Baker Aircraft Co., Ltd.* involved a complaint that "refer[red] generally to management and provide[d] a long list of names without ever explaining the role these individuals played in the alleged fraud."   389 F.3d 1251, 1257 (D.C. Cir. 2004).   Because so many individuals were possibly involved, the court could not find that the pleaders had met the requirement of "identify[ing] individuals allegedly involved in the fraud." *Id.* at 1256.   And in *Slinski*, where the court noted that reference must be made to "individuals allegedly involved in the fraud" in order to "guarantee all defendants sufficient information to allow for preparation of a response," 981 F. Supp. 2d at 32, the court nonetheless found that the contract at issue was "itself . . . evidence of . . . the individual who made it on behalf of . . . [defendant]," *id.*

---

[6] Defendants also point to the Disclosure Statement—including text declaring that "THIS STATEMENT IS NOT A WARRANTY OF ANY KIND BY THE SELLER . . . IN THIS TRANSACTION, AND IS NOT A SUBSTITUTE FOR ANY INSPECTIONS OR WARRANTIES THE BUYER MAY WISH TO OBTAIN"—to argue that extra-contractual representations cannot form the basis of a fraud claim.   Reply at 4-5; Defs.' Ex. 1 at 31.   However, the cited text within the Disclosure Statement does not automatically preclude a fraud–in–the–inducement claim.   Like the Sales Contract's integration clause, the Disclosure Statement's disclaimer of any warranty is boilerplate language that, if recognized as automatically preclusive of a fraud claim, "would leave swindlers free to extinguish their victims' remedies simply by sticking in a bit of boilerplate." *Whelan*, 48 F.3d at 1258.   Where, as here, Plaintiffs have alleged that Defendants knew about the defects in the Property's construction, but failed to disclose them in an effort to induce Plaintiffs to buy the Property, the court cannot conclude at this stage that Plaintiffs' reliance on the representations or omissions in the Disclosure Statement was unreasonable.

Here, where Plaintiffs have alleged that only two Defendants are involved, there is little risk that Defendants will face difficulty answering the allegations made against them merely because the Complaint fails to specify which Defendant made the alleged fraudulent representations or material omissions.  After all, the Complaint alleges that both Defendants owned and advertised the Property for sale and both Defendants signed the Disclosure Statement.  *See* Compl. ¶¶ 5, 12, 14.  Thus, Plaintiffs have accused both of fraud in the inducement.  Although Plaintiffs could have pled their claim so as to identify which of the two Defendants made which alleged fraudulent representations—or, specify that both did so—Defendants in this case are not in any meaningful way disadvantaged by that modest deficiency.  *Cf. Diaby v. Bierman*, 795 F. Supp. 2d 108, 113 (D.D.C. 2011) (reference to "defendant" in the singular form was not sufficient where plaintiff "fail[ed] to specify to which of the multiple corporate defendants he referred); *Plesha v. Ferguson*, 725 F. Supp. 2d 106, 113 (D.D.C 2010) (dismissing claim under Rule 9(b) where plaintiff merely made a general claim that "Defendants made multiple representations of material fact" over a two-year timespan); *Simms v. District of Columbia*, 699 F. Supp. 2d 217, 227 (D.D.C. 2010) (dismissing a claim under Rule 9(b) where the plaintiff "present[ed] no facts other than general statements as to the who, what, where, and when of the statements allegedly made" by the corporate defendant); *The Scowcroft Grp., Inc. v. Toreador Res. Corp.*, 666 F. Supp. 2d 39, 45 (D.D.C. 2009) (finding sufficient particularity under Rule 9(b) even though "Plaintiff did not specify which individual . . . perpetrated the alleged fraud" because the dates and nature of the misrepresentations were identified and could be cross-referenced with documents incorporated into the complaint by reference, putting the defendant on sufficient notice); *Anderson v. USAA Cas. Ins. Co.*, 221 F.R.D. 250, 255 (D.D.C. 2004) (dismissing a claim under Rule 9(b) because defendants only asserted "a blanket belief that defendants as a group

'misrepresented or withheld material and significant facts'" where complaint included multiple corporate defendants).

Accordingly, for the reasons stated, the court declines to dismiss Plaintiffs' fraudulent misrepresentation claim.

## B.       Negligent Misrepresentation (Count III)

Under District of Columbia law, "the elements of a negligent misrepresentation claim are the same as those of a fraudulent misrepresentation claim, except a negligent misrepresentation claim does not include the state of mind requirements of fraud." *See Regan*, 2015 WL 5611402 at *10; *see also Parr*, 774 F. Supp. 2d at 240.  And, like claims for fraudulent misrepresentation, Rule 9(b)'s particularity requirements apply to claims for negligent misrepresentation. *See Jefferson v. Collins*, 905 F. Supp. 2d 269, 286 (D.D.C. 2012) (stating that a claim of negligent misrepresentation "must be pleaded with particularity in order to satisfy Rule 9(b)").

Plaintiffs' claim of negligent misrepresentation rests on the same statements and omissions as their fraud claim.  *See* Compl. ¶¶ 14, 42; Opp'n at 14.  And Defendants argue that "[f]or the same reasons Plaintiffs' fraudulent misrepresentation claim must be dismissed with prejudice, Plaintiffs' negligent misrepresentation claim must be dismissed with prejudice as well."  Mot. to Dismiss at 9.  Because of the parallel nature of the claims, Plaintiffs' negligent misrepresentation claim survives to the same extent—and for the same reasons—as Plaintiffs' fraudulent misrepresentation claim.

## C.       Violation of the Consumer Protection Procedures Act (Count I)

In their Complaint, Plaintiffs allege that Defendants "violated the Consumer Protection Procedures Act, D.C. Code § 28-3904 *et seq.*, by engaging in unlawful and deceptive trade practices."  Compl. ¶ 32.  Specifically, Plaintiffs aver that "Defendants made misrepresentations

as to material facts that have a tendency to deceive;" "Defendants failed to state material facts that tended to mislead [P]laintiffs;" and "Defendants represented that the Property had characteristics that it did not have."  Compl. ¶¶ 32(a)-(c).  In response, Defendants contend that Plaintiffs have failed to state a claim because their District of Columbia Consumer Protection Procedures Act ("CPPA") claim "is barred by its equivalence to their breach of contract claim."  *Id.* at 4-6.  They also argue that the claim is barred by the Sales Contract's integration clause.  Reply at 3.  Finally, they argue that Plaintiffs have not pled their claim with sufficient particularity under Rule 9(b).[7] Mot. to Dismiss at 6.  In other words, Defendants urge dismissal of the CPPA for the same reasons as the fraudulent misrepresentation claim.  For the same reasons that the court rejected Defendants' arguments for dismissal of Plaintiffs' fraudulent misrepresentation claim, it rejects Defendants' arguments for dismissal of Plaintiffs' CPPA claim.  Defendants' motion to dismiss Plaintiffs' CPPA claim therefore is denied.

### D.    Breach of Contract (Count IV)

Plaintiffs claim that Defendants materially breached their contract with Plaintiffs when they failed to deliver the Property under the terms agreed upon in the Sales Contract.  Specifically, Defendants:

> fail[ed] to deliver the property with a full basement kitchen, fail[ed] to have the agreed upon repairs made by a . . . licensed contractor, fail[ed] to make . . . [the repairs] in a good workmanlike manner, fail[ed] to install the stove in working order and fail[ed] to have DCRA's final inspection and approval prior to occupancy.

---

[7] The parties dispute whether the pleading standard under Rule 8 or Rule 9(b) applies to a CPPA claim.  Mot. to Dismiss at 6; Opp'n at 7-9.  The court need not wade into that debate, though, because it already has concluded that the Complaint's allegations satisfy Rule 9(b), as discussed above.  The court does note, however, despite Defendants' contention that "the law of the District is well-established that allegations of CPPA violations must comply with Rule 9(b)[,]" Reply at 6, the precedent is not so clear.  At least four District of Columbia Superior Court judges have held that Rule 9(b) does not apply to allegations of CPPA violations.  *See District of Columbia v. Hofgard*, Civ. No. 2015 CA 003354 B (D.C. Super. Ct. Aug. 5, 2015), at 9-10 (holding that Rule 9(b) does not apply to the CPPA and listing other Superior Court cases that have found the same).

Compl. ¶ 49.  In turn, Defendants' sole argument for dismissal is that Plaintiffs have failed to state a claim because they failed "to allege how Plaintiffs were damaged by the alleged breach."  Mot. to Dismiss at 10.

Under District of Columbia law, however, Plaintiffs are not required to allege the damages caused by a breach of contract to survive a Rule 12(b)(6) motion to dismiss.  *Francis v. Rehman*, 110 A.3d 615, 620 (D.C. 2015).  At this stage, "it is enough for the plaintiff to describe the terms of the alleged contract and the nature of the defendant's breach." *Id.* (citation omitted).  Plaintiffs have described the terms of the Sales Contract, including the consideration given, the contingencies established, and the two rounds of amendments made by the parties.  Compl. ¶¶ 15-17, 44-48.  As restated above, they also have identified Defendants' alleged contractual breaches. *Id.* ¶ 49.  Defendants have not argued that the Complaint is lacking in those respects.  Furthermore, even if the law were to require a statement of damages, Plaintiffs have adequately alleged such damages in other parts of their Complaint.  *See, e.g.*, Compl. ¶¶ 15, 24, 30.  Accordingly, the court holds that Plaintiffs have sufficiently stated a claim for breach of contract.

### E.      Breach of the Covenant of Good Faith and Fair Dealing (Count V)

According to Plaintiffs, Defendants "violated their duty of good faith and fair dealing through the . . . misrepresentations and omissions [they] made before and after the sales contract was signed."  Compl. ¶ 53.  Defendants assert that Plaintiffs' claim is duplicative of their other claims.  Mot. to Dismiss at 11.  Because a "claim for breach of the implied covenant is not an independent cause of action when the allegations are identical to other claims for relief under established cause of action," Defendants argue that Plaintiffs should not be permitted to proceed with this claim.  *Id.* (internal quotation marks omitted) (citing *Wash. Metro. Area Transit Auth. v.*

*Quik Serve Foods, Inc.*, Nos. 04-838 (RCL) & 04-687(RCL), 2006 WL 1147933, at *5 (D.D.C. Apr. 28, 2006) (citations omitted)).

Yet a closer look at the case cited by Defendants—*Washington Metropolitan Area Transit Authority* ("*WMATA*")—undermines their assertion.  *WMATA* bases its statement that "breach of the implied covenant is not an independent cause of action when the allegations are identical to other claims for relief under [an] established cause of action" on a single case, *Jacobson v. Oliver*, 201 F. Supp. 2d 93, 98 n.2 (D.D.C. 1996).  *Wash. Metro. Area Transit Auth.*, 2006 WL 1147933, at *5.  *Jacobson*, in turn, addressed the issue in the context of a legal malpractice case—not a contract case—and based the principle on a non-binding Third Circuit case.  201 F. Supp. at 99.  Although some courts have been persuaded by *Jacobson*, *see, e.g.*, *Xereas v. Heiss*, 933 F. Supp. 2d 1, 8 (D.D.C. 2013), others have not, *see Lans v. Adduci Mastriani & Schaumberg, L.L.P.*, 786 F. Supp. 2d 240, 319 (D.D.C. 2011).  This court counts itself among those in the latter group.  Furthermore, Plaintiffs are not required at the pleadings stage to choose between alternative remedies.  *See Parr*, 774 F. Supp. 2d at 244 (citing *Modern Mgmt. Co. v. Wilson*, 997 A.2d 37, 44 n.10 (D.C. 2010) ("[A] plaintiff is not required to elect between . . . alternative claims before the case is submitted to the jury" (citation and internal quotation marks omitted)).  Accordingly, Defendants motion to dismiss Plaintiffs' claim of a breach of the covenant of good faith and fair dealing is denied.

### F.    Negligence (Count VI)

Plaintiffs allege that Defendants violated "a duty of care to have the Property renovated by a licensed contractor in accordance with all applicable laws and industry standards," as well as "a duty to disclose all known defects."  Compl. ¶¶ 56-57.  Defendants respond with a familiar argument, however, and assert that Plaintiffs have failed to state a claim because they neglected to

28

"allege facts separable from the terms of the contract and a duty independent of the underlying contract." Defs.' Mot. to Dismiss at 12 (citations omitted). Plaintiffs, however, did not address Defendants' contentions in their Opposition. *See generally* Opp'n.

"[W]hen a plaintiff files a response to a motion to dismiss but fails to address certain arguments made by the defendant, the court may treat those arguments as conceded[.]" *Lockhart v. Coastal Int'l. Sec., Inc.*, 905 F. Supp. 2d 105, 118 (D.D.C. 2012) (citations and internal quotation marks omitted). *See also Texas v. United States*, 798 F.3d 1108, 1110 (D.C. Cir. 2015) ("[I]f a party files an opposition to a motion and therein addresses only some of the movant's arguments, the court may treat the unaddressed arguments as conceded" (citations and internal quotation marks omitted)); *Toms v. Office of the Architect of the Capitol*, 650 F. Supp. 2d 11, 18 (D.D.C. 2009) ("[W]hen the plaintiff is represented by counsel, [the court] may consider as conceded any arguments raised by a defendant's Rule 12(b)(6) motion that are not addressed in a plaintiff's opposition" (citations omitted)); *Tnaib v. Document Techs., LLC*, 450 F. Supp. 2d 87, 91 (D.D.C. 2006) ("Because . . . the plaintiff's response to the defendant's motion to dismiss failed to address . . . [certain] arguments . . . the court treats those arguments as conceded and grants . . . [defendant's] motion to dismiss."). Because Plaintiffs did not respond to Defendants' argument that they failed to state a negligence claim, the court finds they conceded the issue. Plaintiffs' negligence claim thus is dismissed.

## G.     Unjust Enrichment (Count VII)

Plaintiffs' final claim against Defendants is one for unjust enrichment. They allege that, due to the Property's many defects, it is "unjust and unconscionable" for Defendants to retain the money paid to them by Plaintiffs above the original purchase price that Defendants paid for the Property. Compl. ¶¶ 62-64. Defendants contend that District of Columbia law prevents Plaintiffs

from asserting such a claim in the presence of an express contract. Mot. to Dismiss at 12-13. Plaintiffs concede that, under District of Columbia law, a claim for unjust enrichment "presuppose[s] that an express enforceable contract is absent." Opp'n at 17 (citing *Plesha*, 725 F. Supp. 2d at 112. Nonetheless, they argue that their claim should proceed as an alternative theory of recovery under Federal Rule of Civil Procedure 8(d). *Id.*

"Because both promissory estoppel and unjust enrichment presuppose that an express, enforceable contract is absent, District of Columbia courts generally prohibit litigants from asserting these claims when there is an express contract that governs the parties' conduct." *Plesha*, 725 F. Supp. 2d at 112 (citations omitted). Although some courts in this District have allowed parties to plead a claim for unjust enrichment as an alternative theory of recovery, *id.* (listing cases), this court declines to do so at this time. Because Defendants here have conceded that a contract exists (and attached it to the Reply in Support of their Motion to Dismiss), Plaintiffs' claim of unjust enrichment is foreclosed. *See id.* (holding that unjust enrichment could not be pled as an alternative theory of recovery where parties did not dispute the existence of the contract and plaintiff had attached the contract to his complaint). Accordingly, Plaintiffs' claim for unjust enrichment is dismissed.[8]

## V.   CONCLUSION

For the reasons stated above, the court grants in part and denies in part Defendants' Motion to Dismiss. Plaintiffs' negligence claim and unjust enrichment claim are both dismissed. So, too, are (1) those portions of their claims that are premised on the allegation that Defendants advertised the Property to be a "stunning renovation," and (2) those portions of their fraud-based and CPPA

---

[8] If, however, circumstances of the case change and the existence of the contract becomes a matter of dispute, the court would entertain reconsideration of this part of its opinion.

claims that are based on Defendants' alleged promises about future repairs.  In all other respects,

Defendants' Motion to Dismiss is denied.


Dated:  March 1, 2016

Amit P. Mehta
United States District Judge